AO 93  (Rev. 12/09) Search and Seizure Warrant   (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT

for the

Central District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No.   2:17-MJ-02098
 )
PREMISES KNOWN AS 14035 TAHITI WAY, UNIT 133, )
MARINA DEL RAY, CALIFORNIA, AS FURTHER )
DESCRIBED AS ATTACHMENT A )
 )

## SEARCH AND SEIZURE WARRANT

To:       Any authorized law enforcement officer

        An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Central_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*

PREMISES KNOWN AS 14035 TAHITI WAY, UNIT 133, MARINA DEL RAY, CALIFORNIA, AS FURTHER DESCRIBED AS ATTACHMENT A

        The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

        I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

        **YOU ARE COMMANDED** to execute this warrant on or before    14 days from the date of its issuance
                                                                                                    *(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

        Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

        The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
                                                        *(name)*

        ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.
                                                        ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    _____        _____
                                                                                    *Judge's signature*

City and state:    Los Angeles, California        Hon. Gail J. Standish, U.S. Magistrate Judge
                                                                                *Printed name and title*

AUSAs: James C. Hughes #4961

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| *Return* | | |
|---|---|---|
| Case No.:<br>    2:17-MJ-02098 | *Date and time warrant executed:* | *Copy of warrant and inventory left with:* |

*Inventory made in the presence of :*

*Inventory of the property taken and name of any person(s) seized:*

[Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.]

---

*Certification*  (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date:  _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AUSAs: James C. Hughes #4961

ATTACHMENT A

PREMISES TO BE SEARCHED

The SUBJECT LOCATION is an apartment located on the first floor
of a beige, multi-occupant, three-level apartment building, located
at 14035 Tahiti Way, Unit 133, Marina Del Rey, CA ("14035 Tahiti
Way").  14035 Tahiti Way is a beige building on the north side of
Tahiti Way, with the building facing north to south. The north side
of 14035 Tahiti Way faces Basin B of the Marina Del Rey marina.  The
building is one of a series of connected apartment buildings forming
the Avalon Marina Bay apartment complex.  14035 Tahiti Way is
physically connected to a neighboring apartment building on its
western side located at 14055 Tahiti Way, Marina Del Rey, CA ("14055
Tahiti Way"). An aerial photograph of the two connected apartment
buildings obtained from the online map service Google Maps is shown
below:



A shared outdoor parking lot for the apartments located at
14035 Tahiti Way and 14055 Tahiti Way is located on the northern

side of the two buildings, and directly abuts the Marina Del Rey marina.  The parking lot may be accessed either via a driveway on the western side of 14055 Tahiti Way or a driveway on the eastern side of 14035 Tahiti Way. The patios for the apartments located on the first floor of 14035 and 14055 Tahiti Way are built approximately one story above the parking lot, with covered parking spaces built directly under the patio areas.  The patio area for the SUBJECT LOCATION is the second easternmost patio space in 14035 Tahiti Avenue.  Below is a photograph taken on August 11, 2017, from the parking lot of 14035 Tahiti Way with the patio space for the SUBJECT LOCATION identified with a red arrow:



The front entrance of 14035 Tahiti Way is comprised of a double door at the top of a small covered flight of stairs. The stairs leading to the double door are covered by a yellow stucco entranceway jutting out from the main building. At the top of the yellow stucco entranceway are the numbers "14035." A photograph of the front entranceway to 14035 Tahiti Way is shown below:



The "front door" entrance of the SUBJECT LOCATION is found by walking in through the southern facing entrance of 14035 Tahiti Avenue, which looks out upon Tahiti Avenue, then walking up a small flight of stairs, turning right, and walking down a hallway to the second to last unit on the left.  The front door entrance to the SUBJECT LOCATION bears the numbers 133.

## **ATTACHMENT B**

The items to be seized are the following items constituting evidence of violations of 18 U.S.C. § 371, conspiracy to defraud the United States of America, and 18 U.S.C. 922(g), unlawful receipt of a firearm by an alien in the United States illegally.

1.    California driver's license, license # C6229477, with the listed address of 30180 Thorne Court, Castaic, CA 91384;

2.    California driver's license, license # C6229477, with the listed address of 211 Yacht Club Way, #334, Redondo Beach, CA 90277.

3.    Any spreadsheets identifying vessels arriving/departing the port of Los Angeles and/or the Port of Long Beach.

AO 93 (Rev. 12/09) Search and Seizure Warrant   (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT

for the
Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>PREMISES KNOWN AS 14035 TAHITI WAY, UNIT 133,<br>MARINA DEL RAY, CALIFORNIA, AS FURTHER<br>DESCRIBED AS ATTACHMENT A | )<br>)<br>)   Case No.   2:17-MJ-02080<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Central_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

PREMISES KNOWN AS 14035 TAHITI WAY, UNIT 133, MARINA DEL RAY, CALIFORNIA, AS FURTHER DESCRIBED AS ATTACHMENT A

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___14 days from the date of its issuance___
*(not to exceed 14 days)*

☑ in the daytime  6:00 a.m. to 10 p.m.     ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   8|18|17 @ 10:50 a.m.     **GAIL J. STANDISH**
_____
*Judge's signature*

City and state:   Los Angeles, California _____     Hon. Gail J. Standish, U.S. Magistrate Judge
*Printed name and title*

AUSAs: James C. Hughes #4961

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| ***Return*** | | |
|---|---|---|
| *Case No.:*<br>2:17-MJ-02080 | *Date and time warrant executed:* | *Copy of warrant and inventory left with:* |

| *Inventory made in the presence of :* |
|---|
|  |

| *Inventory of the property taken and name of any person(s) seized:* |
|---|
| [Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes).  If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.] |

| ***Certification***  (by officer present during the execution of the warrant) |
|---|

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

*Date:* _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AUSAs: James C. Hughes #4961

<u>ATTACHMENT A</u>

<u>PREMISES TO BE SEARCHED</u>

    The SUBJECT LOCATION is an apartment located on the first floor
of a beige, multi-occupant, three-level apartment building, located
at 14035 Tahiti Way, Unit 133, Marina Del Rey, CA ("14035 Tahiti
Way").  14035 Tahiti Way is a beige building on the north side of
Tahiti Way, with the building facing north to south. The north side
of 14035 Tahiti Way faces Basin B of the Marina Del Rey marina.  The
building is one of a series of connected apartment buildings forming
the Avalon Marina Bay apartment complex.  14035 Tahiti Way is
physically connected to a neighboring apartment building on its
western side located at 14055 Tahiti Way, Marina Del Rey, CA ("14055
Tahiti Way"). An aerial photograph of the two connected apartment
buildings obtained from the online map service Google Maps is shown
below:



    A shared outdoor parking lot for the apartments located at
14035 Tahiti Way and 14055 Tahiti Way is located on the northern

side of the two buildings, and directly abuts the Marina Del Rey marina.  The parking lot may be accessed either via a driveway on the western side of 14055 Tahiti Way or a driveway on the eastern side of 14035 Tahiti Way. The patios for the apartments located on the first floor of 14035 and 14055 Tahiti Way are built approximately one story above the parking lot, with covered parking spaces built directly under the patio areas.  The patio area for the SUBJECT LOCATION is the second easternmost patio space in 14035 Tahiti Avenue.  Below is a photograph taken on August 11, 2017, from the parking lot of 14035 Tahiti Way with the patio space for the SUBJECT LOCATION identified with a red arrow:



The front entrance of 14035 Tahiti Way is comprised of a double door at the top of a small covered flight of stairs.  The stairs leading to the double door are covered by a yellow stucco entranceway jutting out from the main building.  At the top of the yellow stucco entranceway are the numbers "14035."  A photograph of the front entranceway to 14035 Tahiti Way is shown below:



The "front door" entrance of the SUBJECT LOCATION is found by walking in through the southern facing entrance of 14035 Tahiti Avenue, which looks out upon Tahiti Avenue, then walking up a small flight of stairs, turning right, and walking down a hallway to the second to last unit on the left.  The front door entrance to the SUBJECT LOCATION bears the numbers 133.

**ATTACHMENT B**

The items to be seized are the following items constituting evidence of violations of 18 U.S.C. § 371, conspiracy to defraud the United States of America, and 18 U.S.C. 922(g), unlawful receipt of a firearm by an alien in the United States illegally.

1.    1 handgun / 9mm / Model Beretta M9 / Serial Number #M9165524;

2.    1 rifle / 5.56 caliber / US Model Centaurus / Serial Number #CT0111;

3.    1 handgun / 9mm / Model Glock 19 / Serial Number #ZFM660;

4.    1 rifle / 5.56 caliber / Lewis Machine and Tool Model MRP Defender / Serial Number #LMT77028.

5.    Cash in excess of $5,000.

6.    Any stamps purporting or appearing to be vessel stamps associated with a designated shipping vessel.

7.    For the period of January 1, 2012 through the present:

a.    Any paperwork documenting the sale and/or purchase of duty-free cigarettes including purchase invoices, TTB Forms 5200.14, delivery receipts, and customs paperwork;

b.    Any ledgers and/or account books summarizing cigarette purchases and sales;

c.    Any rolodexes, contact logs, and address books, documenting the contact information (including names, phone numbers, and/or addresses) for customers and suppliers of cigarettes.

d.    Any receipts, invoices, or rental agreements for any storage facility or storage locker.

# UNITED STATES DISTRICT COURT

### for the

### Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>PREMISES KNOWN AS 14035 TAHITI WAY, UNIT 133,<br>MARINA DEL RAY, CALIFORNIA, AS FURTHER<br>DESCRIBED AS ATTACHMENT A | )<br>)<br>)<br>)<br>)<br>)    Case No. 2:17-MJ-02080 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Premises known as 14035 Tahiti Way, Unit 133, Marina Del Rey, CA, as further described in Attachment A.

located in the _____ Central _____ District of _____ California _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy to defraud the United States |
| 18 USC § 922(g) | Unlawful receipt of a firearm |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Rafael Torres, DHS-ICE-HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____

_____
*Judge's signature*

City and state: Los Angeles, California

Hon. Gail J. Standish, U.S. Magistrate Judge
*Printed name and title*

AUSAs: James C. Hughes (#4961)

<u>AFFIDAVIT</u>

I, Rafael Torres, being duly sworn, declare and state as
follows:

## I.    <u>INTRODUCTION</u>

1.    I am a Special Agent ("SA") with the Homeland Security
Investigations (HSI), and have been so employed since September
2007. I am currently assigned to HSI Los Angeles, where I
investigate violations of federal law related to contraband.  In the
course of my duties as an HSI SA, I have participated in and
conducted investigations of narcotics smuggling, intellectual
property rights violations, and other fraud-related offenses.  I
received formal training regarding law enforcement techniques used
to investigate the suspected commission of federal offenses at the
Federal Law Enforcement Training Center.

2.    During my tenure in law enforcement, I have been involved
in the use of the following investigative techniques: interviewing
confidential sources and cooperating witnesses; conducting physical
surveillance; conducting short and long term undercover operations;
conducting reverse undercover drug operations; participating in
controlled buys; conducting consensual monitoring and recording of
both telephonic and non-telephonic communications; analyzing
telephone pen register data; requesting, collecting and analyzing
billing records; reviewing invoices and reports; conducting court-
authorized electronic surveillance; and conducting extensive review
of financial records, tax documents and review of documents related
to corporate and individual assets.  Further, I have participated in
the preparation, presentation and execution of numerous search and
arrest warrants which have resulted in the recovery of weapons,

narcotics, contraband cigarettes, money, financial instruments and
documentary evidence indicative of fraud.  Additionally, I have
assisted in investigations and arrests leading to convictions for
violations of federal and state laws.

## II. PURPOSE OF AFFIDAVIT

3.    This affidavit is made in support of an application for a
warrant to search the following location for items constituting
evidence of violations of Title 18, United States Code, Sections 371
(conspiracy to defraud the United States) and 922(g) (unlawful
receipt of a firearm by an alien in the United States illegally):
14035 Tahiti Way, Unit 133, Marina Del Rey, CA 90292 (the "SUBJECT
LOCATION").

4.    Based on the following, I respectfully submit that there
is probable cause to believe the SUBJECT LOCATION contains evidence
of violations of 18 U.S.C. §§ 371 (conspiracy to defraud the United
States) and 922(g)(5) (receipt of a firearm by an alien in the
United States illegally) (the "Target Offenses"), committed by Un
Hag Baeg ("Baeg").

5.    The facts set forth in this affidavit are based upon my
personal observations, my training and experience, and information
obtained from various law enforcement personnel and witnesses.  This
affidavit is intended to show merely that there is sufficient
probable cause for the requested warrant and does not purport to set
forth all of my knowledge of, or investigation into, this matter.
Unless specifically indicated otherwise, all conversations and
statements described in this affidavit are related in substance and
in part only.

III. <u>THE LOCATION TO BE SEARCHED</u>

6.    The SUBJECT LOCATION is an apartment located on the first floor of a beige, multi-occupant, three-level apartment building, located at 14035 Tahiti Way, Unit 133, Marina Del Rey, CA ("14035 Tahiti Way").  The SUBJECT LOCATION is further described as follows:

      a.    See Attachment A

IV. <u>STATEMENT OF PROBABLE CAUSE</u>

7.    I am assigned to a criminal investigation of possible violations of Title 18, United States Code, Sections 545 (smuggling of goods into the United States), 371 (conspiracy to defraud the United States), and 2142(a) (shipping, transporting, receiving, possessing, selling, distributing, or purchasing contraband cigarettes); and Title 26, United States Code, 5762(a)(3) (evading and defeating tobacco excise tax), and 5762(a)(4)(unlawfully removing tobacco products from bond) occurring at a customs bonded warehouse[1] operated by Marine Wholesale Inc. ("Marine Wholesale") located at 727 West Capitol Drive, San Pedro, CA 90731 (the "Marine Wholesale Warehouse").  My investigation is focused on the illegal removal of duty free tobacco products from the Marine Wholesale Warehouse and the diversion of these tobacco products into U.S. commerce without the payment of federal excise tax.

8.    Pursuant to my involvement in the abovementioned investigation I am also investigating potential violations of 18

---

[1] From my training and experience I know that a customs bonded warehouse is a location in which imported merchandise may be stored without payment of tax or duties for up to five years.  When imported merchandise is removed from a customs bonded warehouse and introduced into the stream of commerce, a CBP Form 7501 must be filed recording the removal.  This CBP Form 7501 must record the amount of taxes and duties payable on the imported goods to be removed from the warehouse.

U.S.C. §§ 922(g)(5) (possession of a firearm by an alien in the country illegally) by Baeg, who is also one of the targets of the abovementioned investigation.

9.    On August 16, 2017, Baeg was indicted within the Central District of California on one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371 and one count of unlawful receipt of a firearm by an alien in violation of 18 U.S.C. 922(g).  The indictment is currently under seal.  The government currently intends to effect the arrest of Baeg on August 18, 2017.

A.    Background

10.    On September 3, 2015, I was contacted by Investigator Nathaniel Booth ("TTB Investigator Booth") with the Alcohol and Tobacco Tax and Trade Bureau (TTB) regarding a potential investigation of the diversion of duty free cigarettes from the Marine Wholesale Warehouse.  Investigator Booth explained to me that Marine Wholesale is a TTB permitted tobacco wholesaler selling duty-free cigarettes and alcohol to ship chandlers supplying ships in the ports of San Pedro and Long Beach.

11.    From my knowledge and experience and conversations with TTB Investigator Booth, I know that duty-free tobacco products are tobacco products on which no duties or federal excise taxes have been imposed, and that said products may only be sold for consumption outside of the United States of America.  From my knowledge and experience, I know that criminals engaged in the diversion of duty-free tobacco products will frequently attempt to remove duty-free tobacco products from customs bonded warehouses under the pretense that said products are to be exported, only to redirect the diverted tobacco products into U.S. commerce.

4

12.    Based on conversations with TTB Investigators Booth and
TTB Investigator Michael Stevens ("TTB Investigator Stevens"), as
well as conversations with representatives of various tobacco
companies, and my own training and experience, I know that
cigarettes are typically sold at the wholesale level by the case.  A
case of cigarettes is typically referred to as a "master case" and
generally contains either 30, 50, or 60 cartons of cigarettes.
These three different types of master cases bear the demarcations
6M, 10M, and 12M respectively. Additionally, a carton contains 10
packs of cigarettes, while a pack contains 20 sticks.  Accordingly,
a 6M master case of cigarettes will contain 6,000 cigarette sticks,
a 10M master case will contain 10,000 cigarette sticks, and a 12M
master case will contain 12,000 cigarette sticks.

13.    On July 10, 2015, Investigator Booth spoke with Marine
Wholesale Vice President Jerry Anderson ("Anderson") on the phone.
TTB Investigator Booth subsequently prepared a memorandum of
activity based on this interview, a copy of which was provided to me
for my review.  Based on my review of this memorandum and my
conversations with Investigator Booth I states as follows:

a.    During the interview, Anderson described Marine
Wholesale as the exclusive wholesaler and exporter for duty free
tobacco products and alcohol for all vessels coming into the Los
Angeles and Long Beach ports.

14.    Anderson stated some of these duty free products are
delivered directly to the ships by Marine Wholesale employees but
the majority of the duty free product is sold to ship supply
companies (also known as ship chandlers) who in turn sell and
deliver the cigarettes to ships in port.

a.    Anderson stated that one of the ship chandlers that
Marine Wholesale delivered to was Far East Ship Supply ("Far East").
Anderson further stated that the quantity of cigarettes purchased by
Far East over the past year had grown significantly.

b.    Anderson stated that approximately one year earlier,
he had been informed by Altria, the manufacturer of Phillip Morris
brand cigarettes, that duty free cigarettes originating from Marine
Wholesale's warehouse were being found in seizures by law
enforcement officers.  Anderson further stated that in order to
assist Altria he had agreed to place handwritten codes on each case
of cigarettes sold by Marine Wholesale.  When subsequent law
enforcement seizures revealed that these markings were being
destroyed, Anderson agreed to begin adding markings in invisible
ink.

c.    Anderson stated that after switching to invisible
ink, Marine Wholesale was notified by Altria that diverted duty free
cigarettes seized by law enforcement had been traced back to Far
East.

15.  On October 5, 2015, TTB investigators with the TTB
National Response Team (NRT) conducted an on-site investigation of
Marine Wholesale.  During the investigation, TTB investigator Booth
and TTB SOI James Ebert interviewed Anderson.  Investigator Booth
subsequently prepared a memorandum of activity based on this
interview, a copy of which was provided to me for my review.  Based
on my review of this memorandum and my conversations with TTB
Investigator Booth I state as follows:

a.    During the interview, Anderson stated that when
Marine Wholesale received an order for cigarettes from a ship

6

chandler, the ship chandler would provide Marine Wholesale with the
name of the vessel to which the cigarettes were to be provided.
Marine Wholesale would then prepare a TTB export form, TTB Form
5200.14[2], documenting the transfer of the cigarettes to the listed
vessel.  If the ship chandler came to Marine Wholesale to pick-up
the purchased cigarettes, rather than having the cigarettes
delivered directly to the subject vessel, Marine Wholesale would
provide the ship chandler with the pre-prepared TTB export forms at
the time of the sale.  The ship chandler would then be responsible
for having the TTB export forms signed and stamped by a
representative of the vessel receiving the cigarettes.  The ship
chandler would then return the signed paperwork to Marine Wholesale.

      b.   During the interview Anderson stated that whenever
Far East placed an order with Marine Wholesale, an individual by the
name of Isaac would pick up the order from the Marine Wholesale
warehouse.  Anderson further stated that Marine Wholesale would
sometimes deliver orders placed by Far East to a warehouse owned by
W&O Pipe Supply Company ("W&O") at 800 West 14th Street, Long Beach,
CA.

     16.  On October 5, 2015, TTB Investigator Michael Stevens ("TTB
Investigator Stevens") and TTB SOI Adam Krautheim  ("TTB SOI
Krautheim") interviewed Isaac Rojas ("Rojas") at the premises of
W&O.  Investigator Stevens subsequently prepared a memorandum of
activity based on this interview, a copy of which was provided to me

---

    [2] Based on my knowledge and experience, and conversations with
representatives of TTB, I know that cigarettes removed from an
export warehouse for either export or for use as supplies on
shipping vessels must be declared under penalties of perjury on TTB
Form 5200.14, Taxable Articles Without Payment of Tax, to document
the removal of cigarettes on which federal excise tax was not paid.

for my review.  Based on my review of this memorandum, and conversations with TTB Investigator Stevens, I state as follows:

a.    During the interview, Rojas stated that he frequently picked up tobacco products from the premises of Marine Wholesale on behalf of Far East.  Rojas stated that he was directed to make these pickups by Baeg, whom Rojas identified as Baeg Young or Young Baeg. Rojas stated that after he picked up tobacco products from Marine Wholesale, he would return the tobacco products to the premises of W&O, and Baeg would then deliver the tobacco to the ships in port. Rojas claimed that he was paid approximately $100 per pickup. Rojas stated Baeg generally contacted him via phone using the telephone number (213) 369-3071.  Rojas identified his own phone number as (626)454-9007.

b.    I have subsequently reviewed phone call logs and subscriber information for the phone number ending 213-369-3071 provided by Verizon wireless.  The records indicate that the phone is a prepaid one that was held in the name of "James Kim" between August 2015 and February 2016.  Phone tolls for the number reveal that the phone was frequently used to call Rojas and the main line of Marine Wholesale between August 2015 and October 2015.

17.  On October 5, 2015, TTB Investigator Stevens and TTB SOI Krautheim boarded the M/V Hanjin Greece ("Hanjin Greece"), a cargo vessel berthed in the Port of Long Beach, and interviewed the captain and chief mate of the vessel.  A memorandum summarizing this interview was subsequently prepared by TTB Investigator Stevens. Based on my review of this memorandum, and my conversations with TTB Investigator Stevens, I state as follows:

a.   During the interview, TTB Investigator Stevens provided the captain of the MV Hanjin Greece with two TTB export forms documenting sales to the vessel by two different ship chandlers in February of 2015.  One of the TTB export forms pertained to a sale of approximately 240 cartons of cigarettes allegedly made to the ship by Far East on or around February 11, 2015.  After reviewing the TTB export form for the purported sale from Far East, the captain of the Hanjin Greece stated that the stamp affixed to the TTB export form was not a legitimate vessel stamp for the Hanjin Greece.  The captain further stated that the Hanjin Greece had no record of receiving cigarettes from Far East in February of 2015.

18.   On October 7, 2015, TTB Investigators Booth and Stevens conducted a follow up interview with Rojas.  I have reviewed the memorandum of interview prepared by investigators Booth and Stevens based on this interview.  During the interview, Rojas admitted that he received payments from Baeg greater than $100 per pickup.  Rojas also acknowledged that, while he had previously stated that he believed the cigarettes Baeg purchased were delivered to vessels in the Los Angeles and Long Beach Ports, he did not believe Baeg had the required transportation worker identification credential (also known as a "TWIC card") needed to access the ports.  Rojas then admitted that he no longer believed the cigarettes purchased by Baeg were being provided to vessels in the Los Angeles and Long Beach ports.

19.   During the interview conducted on October 7, 2015, Rojas further alleged that Baeg had the following firearms in his possession that Rojas had previously purchased and were registered

9

to Rojas: 1) a Beretta semi-automatic pistol; 2) a Glock semi-
automatic pistol; and 3) 2 AR-15 5.56 caliber semi-automatic Rifles.
Rojas stated that he had not purchased the guns for Baeg, but rather
that he (Rojas) was a gun enthusiast, and that his wife would not
allow him to keep the weapons in his house.  Rojas claimed that he
had therefore left the firearms at Baeg's residence.  Rojas stated
that Baeg lived at 211 Yacht Club Way, Apartment 334, Redondo Beach,
California.

       20.  On October 15, 2015, I conducted an interview of Rojas.
Prior to the interview, I performed a search of the California DMV
database and located a photograph of an individual identified as Un
Hag Baeg submitted in conjunction with a California driver's license
application.  The individual in the application had a listed date of
birth of April 17, 1959, and a false social security number of a
deceased individual.  During the interview, I presented this
photograph to Rojas as one of six photographs in a "six-pack" line
up.  Rojas identified the individual in the application photo as the
individual he knew as "Young Baeg."  Rojas stated that the last time
he had spoken with Baeg, Baeg told Rojas to "lose his number" and
never contact him again.  Rojas reiterated that Baeg still had four
firearms in his possession that were registered in Rojas's name.
Rojas further stated that Baeg was also in possession of a 2015 Land
Rover registered in Rojas's name.  Rojas stated that he had leased
the car in his own name, but that Baeg made all payments on the
vehicle.

       21.  On October 29, 2015, Rojas filed a police report with the
Redondo Beach Police Department reporting the subject firearms as
stolen.  I have reviewed the police report filed by Rojas.  The

                                  10

report identifies the subject firearms as follows: 1) 1 handgun / Model Beretta M9 / Serial Number #M9165524; 2) 1 Rifle / US Model Centaurus / Serial Number #CT0111; 3) 1 handgun / Model Glock 19 / Serial Number #ZFM660; 4) 1 Rifle / Lewis Machine and Tool Model MRP Defender / Serial Number #LMT77028 ("the subject firearms").

22.  On December 9, 2015, I conducted a follow up interview with Rojas.  During the interview, Rojas admitted that Baeg used "ship serve"[3] websites and/or programs to identify vessels in the Los Angeles and Long Beach ports to which he would claim to be supplying cigarettes when making purchases from Marine Wholesale. Rojas claimed that after Baeg identified the vessels, he would call Marine Wholesale and attempt to order as many cigarettes on behalf of each of the identified vessels as Marine Wholesale would allow. Rojas stated that after Baeg received approval for his purchases, he would contact Rojas and inform him an order was ready for pick-up. Rojas stated that Baeg would then provide him with cash for the purchase of the subject cigarettes.  Rojas would then take the cash to Marine Wholesale, and receive the ordered cigarettes along with the partially completed TTB export forms.  Rojas stated that Baeg would falsify the TTB export paperwork using fraudulent vessel stamps fabricated to appear like legitimate vessel stamps for the listed vessels.  Rojas claimed that on one occasion in June 2015 he observed Baeg receive a bag of what appeared to be false ship stamps from another individual.

_____

[3] Based on my knowledge and experience, the "ship serve" programs mentioned by Rojas are likely programs/websites such "Marine Traffic" which permit users to identify shipping vessels scheduled to visit a designated port.

23.   During the interview conducted on December 9, 2015, Rojas permitted me to photograph a series of text message exchanges between Rojas and Marine Wholesale employee Dawn Fitler ("Fitler"). In one exchange on October 27, 2015, Rojas remarks regarding Baeg "…the least he can do is return the SUV and my guns."  In response Fitler states "yea he should."

24.   On December 11, 2015, Rojas contacted me via telephone and told me that the 2015 Land Rover driven by Baeg had been located and towed to a lot located at 11101 Hindry Avenue, Los Angeles, CA 90045.

25.   On December 15, 2015, I visited the premises of Bruffy's Del Rey Tow – Official Police Garage Unit 14, located at 11101 Hindry Avenue, Los Angeles, California ("Bruffy's").  I was accompanied by IRS Criminal Investigation Special Agent Deborah White and TTB Investigator Booth.  During the visit, I confirmed the presence of a Black 2015 Range Rover, California license plate number 7JXU130, registered in the name of Rojas (the "subject vehicle").  I was informed by a Bruffy's employee that the subject vehicle had been towed to Bruffy's at the request of the Los Angeles Department of Beaches and Harbors ("DB&H").  I was subsequently informed by a representative of DB&H that the subject vehicle was towed after being abandoned in a county lot in Marina Del Rey.

26.   Approximately ten minutes after I arrived at Bruffy's, Rojas arrived at the lot and granted written consent to search the subject vehicle.  After Rojas granted written consent, the subject vehicle was searched for evidence.  None of the subject firearms alleged to be in Baeg's possession were found during the search of the subject vehicle.

27.  On March 17, 2016, HSI Special Agent John Chopp ("SA
Chopp") and I conducted a consent search of the apartment located at
Unit 334, Crystal Cove Apartments, 211 Yacht Club Way, Redondo
Beach, California.  The search was performed pursuant to the written
consent of Kimberly Notch ("Notch"), the manager for the Crystal
Cove apartments.  Notch informed us that the apartment was leased in
the name of an individual other than Baeg, and that all previous
tenants had been legally evicted.  During the search of the
premises, I discovered numerous items of correspondence addressed to
Baeg.  However, I did not locate any of the subject firearms.
Additionally, I did not locate any vessel stamps, false export
forms, or other documents and/or instrumentalities used in the
diversion of export-only cigarettes.

28.  On November 10, 2016, I conducted an interview of Rojas in
the presence of his attorney pursuant to a proffer agreement.  Also
present during the interview were Assistant United States Attorney
James Hughes and Department of Justice Trial Attorney Christopher
Strauss.  During the proffer, Rojas stated that when he had worked
for Baeg, he had frequently witnessed customers purchasing diverted
cigarettes from Baeg.  Rojas stated that during the time he was
working for Baeg he would frequently pick up cigarettes from Marine
Wholesale and take the cigarettes back to the W&O warehouse, where
one of Baeg's customers would be waiting.  The customer would then
provide Baeg with cash for the purchase of the cigarettes and would
load the cigarettes into their own vehicle.  Rojas stated that on
other occasions, when Baeg was not available, Rojas would receive
cash from Baeg's customers and would provide the cash to Baeg at a
later date.  Rojas stated that on those occasions when he received

13

money from one of Baeg's customers for diverted cigarettes purchased from Marine Wholesale, the amount of money paid by the customer was significantly higher than the price charged by Marine Wholesale for the purchased cigarettes.  By way of example, Rojas estimated that Baeg would purchase cigarettes from Marine Wholesale for between $315 and $350 per master case and sell the cigarettes for $650 per case.

29.  Rojas's statements on November 10, 2016 appear to understate the price of cigarettes charged by Marine Wholesale. Based on my review of sales records provided by Marine Wholesale, I have observed that Marine Wholesale charged between $428 and $510 for a 6M case of Marlboro brand cigarettes during the period of August 2012 through October 2015.  Assuming Baeg received approximately $650 per master case from his customers, as estimated by Rojas, this would result in a profit per master case of approximately $140 per master case.

30.  Pursuant to this investigation I have reviewed a spreadsheet summarizing the cigarette purchases made by Far East during the period of August 2, 2012 through October 2, 2015.  This spreadsheet was provided to the TTB by Marine Wholesale following the onsite investigation of Marine Wholesale. The spreadsheet indicates that between August 2, 2012 and October 2, 2015, Far East purchased 22,927 6M master cases of cigarettes from Marine Wholesale.  Based on the statements of Rojas regarding the amounts realized by Baeg for each master case sold, I find there is probable cause to believe that Baeg generated millions of dollars in income from the sale of export only cigarettes during the period of 2012 through 2015.

B.    Recent Communications with Baeg

31.   On June 14, 2017, I conducted an additional interview of Rojas, in the presence of his attorney, pursuant to a proffer agreement.  Also present during the interview were Assistant United States Attorney James Hughes and Department of Justice Trial Attorney Christopher Strauss.  Based on my conversations with Rojas during the abovementioned proffer I state as follows:

32.   During the interview, Rojas stated that on May 20, 2017, he received a text message from an unknown individual whom he believed to be Baeg.  The phone number from which he received the text message was 213-259-4427.  Rojas stated that he subsequently called the subject number and spoke with Baeg on the telephone and exchanged small talk.

    a.    Rojas stated that on June 1, 2017, Rojas spoke with Baeg again on the telephone.  During this conversation, Baeg stated that he was running out of money and was thinking about going back to trafficking cigarettes. Baeg further stated that he was still in possession of the Beretta M9 9mm pistol (serial number #M9165524), the 5.56 caliber semi-automatic rifle manufactured by Mount Star, Inc. (Serial Number #CT0111), and the 5.56 caliber semi-automatic rifle manufactured by Lewis Machine & Tool, Inc. (serial number #LMT77028).  Baeg told Rojas that he had given away the Glock 19, 9mm pistol (serial number #ZFM660) to another individual.  Rojas stated that Baeg did not identify by name the person to whom he gave the Glock 19, 9mm pistol.  Rojas stated that Baeg had claimed to be in Bakersfield, California.

    b.    After the conclusion of the interview, Rojas agreed to place a consensually monitored phone call to Baeg.  During the

phone call, Rojas was unable to make contact with Baeg, but left a
voice message requesting that Baeg return his call.  Rojas agreed to
contact me if Baeg returned his phone call.  Rojas's attorney stated
that I had his consent to speak with Rojas outside of his presence
for the limited purpose of monitoring a consensually monitored phone
call with Baeg.

33.  On July 7, 2017, I received a telephone call from Rojas.
During the telephone call Rojas informed me that he had spoken with
Baeg earlier in the day on his cell phone and that he had recorded
the conversation.  Later the same day, I obtained a copy of the
recording from Rojas.  I have subsequently reviewed the recording.
In the recording, an individual identified by Rojas as Baeg and
Rojas are heard discussing potentially returning to cigarette
trafficking, with Baeg remarking "that's what I am saying, no
choice, no escape, cigarettes, cigarettes again."  During the
conversation, Baeg can also be heard discussing the firearms he
received from Rojas.  Specifically, in response to questioning from
Rojas, Baeg states that he has in his possession two "AR-15's" but
that he does not have "the Glock" or "the Beretta."  In reference to
"the Glock", Baeg explains "I give it to Dawn", an apparent
reference to Marine Wholesale employee Dawn Fitler.  In reference to
"the Beretta", Baeg explains the weapon was "lost" in Bakersfield.

34.  Based on my training and experience, I find there is
probable cause to believe that Baeg's representations to Rojas
regarding his disposition of the Beretta and the Glock constitute
false statements made in order to retain the subject firearms.
Notably, Baeg's statements regarding his disposition of the Glock
conflict with the statements made to Rojas by Fitler via text on

16

October 27, 2015.  In this exchange, Rojas states that Baeg should
return his firearms, and Fitler responds "yea he should."  Fitler
makes no comment that she has received any of Rojas's firearms from
Baeg.  Baeg's statements regarding his loss of the Beretta also
appear to be highly suspect.  Given that Baeg made no mention of
losing the Beretta during his previous conversation with Rojas on
June 1, 2017, it is highly unlikely that he lost the weapon
somewhere in Bakersfield sometime between June 1, 2017, and July 7,
2017.

     C.   <u>Evidence regarding Baeg's Current Location</u>

    35.  I have reviewed phone records provided by T-Mobile for the
telephone number 213-259-4427 ("Phone #1"), the number used by Baeg
to contact Rojas between May 20, 2017 and July 7, 2017.  Billing
records for this phone indicate that it is registered in the name of
"Young Kim."

    36.  On June 30, 2017, pursuant to the application of the
government, the Honorable United States Magistrate Judge Alexander
F. Mackinnon issued a warrant authorizing the disclosure of cell-
site information and GPS information related to Phone #1.  This
warrant was subsequently served on the cellular telephone service
provider T-Mobile/Metro PCS ("T-Mobile") on July 7, 2017. Pursuant
to this warrant, I received updates from T-Mobile regarding the GPS
position of Phone #1 via email, at 15 minute intervals, for the
period of July 7, 2017 through August 14, 2017.  Each of these
emails contains a hyperlink to the online map program Google Maps
with a designated latitude and longitude. Each of the emails also
lists the margin of error for the specified geographic location.

37.   On or about July 11, 2017 I received an email update from T-Mobile regarding Phone #1.  The update placed the GPS location of Phone Number #1 at latitude 33.974233° north and longitude 118.454311° west, with a margin of error of approximately 98 meters. These geographic coordinates corresponded to an apartment complex on Tahiti Way in Marina Del Rey, California, called the Avalon Marina Bay.

38.   On August 11, 2017, I went to the management offices of the Avalon Marina Bay apartment complex located at 14015 Tahiti Way, Marina Del Rey, California 90292 and spoke with Sanford Briscoe ("Briscoe"), the maintenance manager for the complex.  During this conversation I provided Briscoe with a photo of Un Hag Baeg submitted in conjunction with a California driver's license application, and asked Briscoe whether he recognized the photo. Briscoe admitted that he recognized the individual in the photo, but stated that he was hesitant to disclose any information without management consent.  I subsequently spoke with Michelle McCarthy ("McCarthy") the community manager of the Avalon Marina Bay apartment complex.  McCarthy stated that the apartment complex would need a subpoena in order to provide the government with information regarding a resident.

39.   On August 3, 2017, following service of a subpoena for records related to Un Hag Baeg, I received an email from McCarthy stating that Un Hag Baeg resides at 14035 Tahiti Way, Unit 133, Marina Del Rey, California 90292, with his wife and a "puppy." McCarthy stated that the unit is leased under the name Jin Kim. McCarthy subsequently confirmed that the unit had the use of two

parking spaces, space numbers 254 and 255, located in the parking
lot on the northern side of 14035 Tahiti Way.

40.  On or about August 3, 2017, I performed a DMV search for
Jin Kim and obtained a photograph for a Jin Kim with a listed
address of 3042 1/2 James M. Wood Blvd., Los Angeles, CA 90006, and
a DOB of 1/6/1959.  I subsequently provided this photo to McCarthy
who confirmed that the pictured woman lived with Baeg.

41.  On August 10, 2017, ATF Special Agent Quan Vuong ("ATF SA
Vuong") conducted surveillance of the parking lot of the apartment
complex located at 14035 Tahiti Way.  I have spoken with ATF SA
Vuong regarding his surveillance.  During the surveillance, ATF SA
Vuong noticed that a white 2017 model Nissan Sentra with license
plate 7ZDW107 was parked in parking spot 255.  ATF SA Vuong
subsequently caused a DMV check on the license plate of the Sentra
and learned that it was a 2017 model, registered to "EAN Holdings
LLC" at 14002 E. 21st Street, Suite 1500, Tulsa, OK 74134.  ATF SA
Vuong also observed a black Range Rover, with the license plate
7SMZ016, parked in parking spot 254 of the parking lot.  ATF SA
Vuong subsequently caused a DMV check on the license plate of the
Range Rover and learned that it was a 2016 model, registered to
"Jung Seun Hwan" at 3042 1/2 James M. Wood Blvd., Los Angeles, CA
90006.

42.  On August 11, 2017 I conducted surveillance of the parking
lot of the apartment complex located at 14035 Tahiti Way with ATF SA
Vuong.  During the surveillance, ATF SA Vuong observed an individual
who appeared to be Baeg enter the Range Rover with an Asian female
and drive out of the parking lot.  I subsequently followed the Range
Rover to a McDonald's restaurant parking lot where I observed an

19

individual who appeared to be Baeg enter the McDonald's with an
Asian female.

43.  On August 17, 2017, I accessed the website for AvalonBay
Communities, Inc. at the URL https://www.avaloncommunities.com in
order to determine the current rental price for an apartment unit
comparable to that currently occupied by Baeg.  Based on information
contained on this website, rental prices for units in the Avalon
Marine Bay range between $3,035 and $4,705 per month.

D.    Additional Information Regarding Subject Firearms

44.  I have reviewed copies of ATF Form 4473, Firearms
Transaction Record, related to Rojas's purchase of each of the
subject firearms.  These records indicate that Rojas purchased the
subject firearms in California between May 26, 2015 and August 15,
2015.  The records confirm that the subject firearms are comprised
of the following weapons: 1) a 9MM pistol, model M9, manufactured by
Beretta, with the Serial Number #M9165524; 2) a 5.56 caliber semi-
automatic rifle, Centaurus Model, manufactured by Mount Star, Inc.,
with the serial number #CT0111; 3) a 9mm pistol, model Glock 19,
manufactured by Glock, Inc., with the serial number #ZFM660; and 4)
a 5.56 caliber semi-automatic rifle / MRP Defender model /
manufactured by Lewis Machine and Tool, Inc., with the serial number
#LMT77028.

45.  On June 16, 2017, I contacted ATF Special Agent Ludger
Parent ("ATF SA Parent") regarding the Subject Firearms. ATF SA
Parent informed me that he was familiar with the geographic
locations of the manufacturing facilities responsible for the
production of the Beretta M9 9mm pistol and the 5.56 caliber semi-
automatic rifle manufactured by Lewis Machine and Tool Company.  ATF

SA Parent stated that neither firearm was manufactured in the State
of California.  ATF SA Parent further stated that the receiver used
in the production of the 5.56 caliber semi-automatic rifles produced
by Mount Star, Inc. was similarly manufactured outside of
California.

    E.    Information regarding Immigration Status of Baeg

    46.    On June 16, 2017, Homeland Security Investigations (HSI)
Special Agents conducted a search in Department of Homeland Security
(DHS) Indices to determine the immigration status of Korean National
Un Hag Baeg (DOB: 04/17/1959).  DHS indices revealed that on January
16, 1990, Un Hag Baeg with a date of birth of April 17, 1959 entered
the United States via Portland, Oregon on flight DL 00050 with
Korean Passport number BS82453322.  Baeg entered the United States
as an ALIEN IN TRANSIT (Direct and continuous travel through the
United States), which allows an alien to travel through the United
States to a final exit U.S. Port of Entry.  The maximum amount of
days for an Alien in Transit to remain in the United States should
not exceed 29 days.  Subsequently, Baeg filled arrival form I-94
with admission number 14409826901, in which Baeg states his
destination as M/T A EXPLORER (possibly a departing Sea Vessel) in
New Orleans, Louisiana.  Based on my review of the results from the
search of these indices, I conclude there is probable cause to
believe Baeg is in this country illegally and without a valid visa.

                V.    EVIDENCE OF CRIME AT SUBJECT LOCATION

    47.    Based on the statements of Rojas regarding his purchase
and subsequent transfer of the subject firearms, my review of ATF
records confirming said purchases, and my review of the recorded
conversations between Rojas and Baeg, I conclude there is probable

                                    21

cause to believe that Baeg is currently in possession of multiple
firearms manufactured outside of California and therefore shipped in
interstate commerce.

48.    Based on my training and experience, the evidence obtained
during the TTB investigation of Marine Wholesale and the subsequent
criminal investigation of Baeg and others, including the statements
of Rojas regarding Baeg's diversion of duty free cigarettes, and
Baeg's recorded statements indicating his intention to return to
trafficking in cigarettes, as well as the observations set out
below, I conclude there is probable cause to believe that the
SUBJECT LOCATION contains evidence, fruits, and instrumentalities of
Baeg's diversion of duty free cigarettes into United States
commerce:

49.    Based on Baeg's current lifestyle (including an expensive
apartment in Marine Del Rey), Baeg's lack of any identifiable
legitimate income, and the large cash profits Baeg is believed to
have generated between 2012 and 2015 through the diversion of export
only cigarettes, I find there is probable cause to believe that Baeg
is still in possession of substantial income from his cigarette
trafficking activities between 2012 and 2015.  Based on Baeg's
documented practice of keeping cars, apartments, and phones in the
names of nominees, and Baeg's status as an alien in the United
States illegally, I find there is probable cause to believe that any
such monies would be kept by Baeg in cash at the SUBJECT LOCATION.

a.    Based on Baeg's statements to Rojas that the two
should return to trafficking cigarettes, I find there is probable
cause to believe that Baeg possesses the means to engage in a
cigarette trafficking enterprise.  Thus, I find there is probable

22

cause to believe that Baeg is still in possession of the instrumentalities he previously used to divert cigarettes into United States commerce, including false vessel stamps.

## VI. <u>ITEMS TO BE SEIZED</u>

50.  Based on the foregoing, I respectfully submit that the items to be seized are the following items, records, and documents:

   See Attachment B, included as an attachment hereto.

## VII. <u>SEALING REQUEST</u>

51.  On August 16, 2017, Baeg was indicted within the Central District of California on one count of conspiring to defraud the United States in violation of 18 U.S.C. § 371 and one count of unlawful receipt of a firearm by an alien in violation of 18 U.S.C. 922(g).  The indictment is currently under seal.  The government currently intends to effect the arrest of Baeg on August 18, 2017. Disclosure of the contents of this affidavit would impede the government's efforts to arrest Baeg by disclosing information showing that the government is currently aware of Baeg's location. Similarly, premature disclosure would likely lead to the destruction of evidence, efforts to dissuade witnesses from cooperating, or other efforts to obstruct justice.  Accordingly, I request that this Court issue an order sealing this affidavit until further order of the Court.

VIII.    <u>CONCLUSION</u>

52.  For all of the above reasons, there is probable cause to believe that the items set forth in Attachment B of this affidavit, will constitute or yield evidence of violations of the Target Offenses being committed by Baeg, and that such items and records are located at the SUBJECT LOCATION, previously described and further described in Attachment A.


_____
Rafael Torres, Special Agent
DHS-ICE-HSI


Subscribed to and sworn before me
this _____ day of August, 2017.


_____
HON. GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE

<u>ATTACHMENT A</u>

<u>PREMISES TO BE SEARCHED</u>

The SUBJECT LOCATION is an apartment located on the first floor
of a beige, multi-occupant, three-level apartment building, located
at 14035 Tahiti Way, Unit 133, Marina Del Rey, CA ("14035 Tahiti
Way").  14035 Tahiti Way is a beige building on the north side of
Tahiti Way, with the building facing north to south. The north side
of 14035 Tahiti Way faces Basin B of the Marina Del Rey marina.  The
building is one of a series of connected apartment buildings forming
the Avalon Marina Bay apartment complex.  14035 Tahiti Way is
physically connected to a neighboring apartment building on its
western side located at 14055 Tahiti Way, Marina Del Rey, CA ("14055
Tahiti Way"). An aerial photograph of the two connected apartment
buildings obtained from the online map service Google Maps is shown
below:



A shared outdoor parking lot for the apartments located at
14035 Tahiti Way and 14055 Tahiti Way is located on the northern

side of the two buildings, and directly abuts the Marina Del Rey marina.  The parking lot may be accessed either via a driveway on the western side of 14055 Tahiti Way or a driveway on the eastern side of 14035 Tahiti Way. The patios for the apartments located on the first floor of 14035 and 14055 Tahiti Way are built approximately one story above the parking lot, with covered parking spaces built directly under the patio areas.  The patio area for the SUBJECT LOCATION is the second easternmost patio space in 14035 Tahiti Avenue.  Below is a photograph taken on August 11, 2017, from the parking lot of 14035 Tahiti Way with the patio space for the SUBJECT LOCATION identified with a red arrow:



The front entrance of 14035 Tahiti Way is comprised of a double door at the top of a small covered flight of stairs. The stairs leading to the double door are covered by a yellow stucco entranceway jutting out from the main building. At the top of the yellow stucco entranceway are the numbers "14035." A photograph of the front entranceway to 14035 Tahiti Way is shown below:



The "front door" entrance of the SUBJECT LOCATION is found by walking in through the southern facing entrance of 14035 Tahiti Avenue, which looks out upon Tahiti Avenue, then walking up a small flight of stairs, turning right, and walking down a hallway to the second to last unit on the left.  The front door entrance to the SUBJECT LOCATION bears the numbers 133.

## ATTACHMENT B

The items to be seized are the following items constituting evidence of violations of 18 U.S.C. § 371, conspiracy to defraud the United States of America, and 18 U.S.C. 922(g), unlawful receipt of a firearm by an alien in the United States illegally.

1.   1 handgun / 9mm / Model Beretta M9 / Serial Number #M9165524;

2.   1 rifle / 5.56 caliber / US Model Centaurus / Serial Number #CT0111;

3.   1 handgun / 9mm / Model Glock 19 / Serial Number #ZFM660;

4.   1 rifle / 5.56 caliber / Lewis Machine and Tool Model MRP Defender / Serial Number #LMT77028.

5.   Cash in excess of $5,000.

6.   Any stamps purporting or appearing to be vessel stamps associated with a designated shipping vessel.

7.   For the period of January 1, 2012 through the present:

a.   Any paperwork documenting the sale and/or purchase of duty-free cigarettes including purchase invoices, TTB Forms 5200.14, delivery receipts, and customs paperwork;

b.   Any ledgers and/or account books summarizing cigarette purchases and sales;

c.   Any rolodexes, contact logs, and address books, documenting the contact information (including names, phone numbers, and/or addresses) for customers and suppliers of cigarettes.

d.   Any receipts, invoices, or rental agreements for any storage facility or storage locker.

5